## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

REBECCA JUNE GRAY                                                    PLAINTIFF

v.                                    No. 3:10CV00210 JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                      DEFENDANT

### OPINION AND ORDER

Rebecca June Gray brings this action pursuant to §§ 205(g), 1631(c)(3), and 1869(b) of the

Social Security Act, for judicial review of a final decision of the Commissioner of the Social

Security Administration denying her claim for disability insurance benefits and supplemental security

income under Title II and Title XVI of the Act, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c),

respectively.  For the following reasons, the decision of the Commissioner is affirmed.

### I.

On March 26, 2008, Gray filed concurrent claims for supplemental security income and

disability insurance benefits, alleging that she had been disabled since November 1, 2007, due to

degenerative disc disease, osteoporosis, and piriformis syndrome.  Specifically, Gray claims that she

is unable to work because of pain in her lower back and right leg.  She also states that she feels

depressed because of her inability to work.  Gray was forty-six years of age at the time of the alleged

onset of disability.

Gray formerly worked as a presser in a dry cleaning shop.  She has also worked as a packer

on an assembly line and in receiving for a tool factory.  Tr. 123.  Gray testified that she tried to work

as a presser in December 2007 but was unable to continue her work because of the pain in her back.

Tr. 122.  On November 11, 2007, Gray reported to Lawrence Memorial Hospital complaining of pain

in her lower back.  Tr. 317-18.  X-rays revealed degenerative changes in her back at L4-L5 and L5-

S1.  Tr. 321.  An MRI of Gray's lumbar spine dated November 15, 2007, indicated left side far lateral disc bulging at L4-L5 and chronic degenerative discovertebral disease at L4-S1.  Tr. 223.  On November 19, 2007, Gray was examined by her treating physician Dr. George Patton.  Tr. 251.  He prescribed Toradol, Percacet, and Diclofenac for her back pain.  Tr. 251.  She returned to Dr. Patton's office on November 27, 2007.  Tr. 250.  At that appointment, Dr. Patton prescribed 50 milligrams of Tramadol and referred her to St. Bernard's Medical Center for physical therapy, which she began on February 7, 2008.  Tr. 267.

On February 13, 2008, Gray underwent an EMG and nerve conduction study, the results of which were consistent with right L5-S1 radiculopathy and piriformis syndrome.  T. 253-54.  On February 22, 2008, Gray met with Dr. John A. Campbell at the Jonesboro Neurosurgery Clinic for a surgery consultation.  T. 230.  Dr. Campbell stated that, upon exam, Gray exhibited a normal gait, intact reflexes, and no apparent distress.  T. 230.  He noted that Gray had "somewhat diminished ranch of motion of the lumbar spine" which "cause[d] her some low back pain."  T. 230.  Upon reviewing her MRI, Dr. Campbell reported "significant deterioration of the L4-5 and L5-S1 intervertebral disk" and "some slight neuroforaminal narrowing" and mild disk protrusion.  T. 230. He advised Gray that surgery should be a last resort.  T. 231.  He recommended that she quit smoking and continue physical therapy.  T. 231.  Dr. K. Dewayne Eubanks, after reviewing Gray's MRI, also determined that there was degeneration of her L4-L5 and L5-S1 and diagnosed her with piriformis syndrome.  T. 233.  He recommended consultation in the pain clinic at St. Bernard's Hospital as well as continued physical therapy.  T. 235.

Between February 7, 2008, and February 20, 2008, Gray underwent six sessions of physical therapy.  T. 191, 284.  At the fifth and sixth sessions, Gray reported no back pain and that she was

sleeping through the night.  T. 191.  She also stated that improved posture was making a difference.  T. 191.  At her last physical therapy appointment, Gray stated that she was able to go shopping and do community walking.  T. 201.  She was instructed to continue her back strengthening program at home.  T. 193.  The therapy discharge evaluation reported that the goals of restoring functional gait, decreasing pain to a functional level of 1/10, and accomplishing the ability to manage symptoms with a home exercise program had been met, while the goals of restoring functional strength and restoring functional muscle strength had been partially met.  Tr. 193.

Dr. George Patton submitted two letters in support of Gray's claim for social security benefits.  In August 2009, Dr. Patton wrote that Gray had spinal stenosis at L4-L5 and L5-S1 as well as piriformis syndrome.  T. 168.  He also stated, "The problems in her back are largely the result of osteoarthritis or degenerative joint disease.  This is a progressive disease and the prognosis for Ms. Gray is poor."  T. 168.  Dr. Patton then concluded that Gray "is indeed medically disabled secondary to her osteoarthritis and other pain syndromes.  I am also pessimistic that with [her] level of education and work experience she will be able to find work that she can perform."  T. 168.

In addition to her back condition, Gray suffers from gastroesophageal reflux disease ("GERD").  She also testified that she has high blood pressure and high cholesterol.  T. 32.  Gray smokes cigarettes, although she has been told that she needs to quit smoking.  T. 32.  On February 15, 2008, Gray arrived at Lawrence Memorial Hospital after having been missing for two days.  She underwent a CT scan and was diagnosed with methamphetamine and marijuana abuse.  T. 315.  She is currently on probation for selling marijuana.  T. 29.  Gray has not received treatment from a psychologist, psychiatrist, or other mental health professional, and her symptoms for GERD appear to be managed through medication.

At her hearing on September 17, 2009, Gray testified that, in a typical day, she gets up at about 4:30 a.m., takes her stomach medicine and blood pressure medicine, and then either starts laundry or picks up the house.  T. 34.  She takes a shower each day and picks up her two grandchildren from school, who are four and five years old.  T. 33.  Gray keeps the grandchildren for an hour each day until their mother gets off of work.  T. 33.  Gray stated that she can mow her yard, but it takes her two days to because she can only mow a little at a time.  T. 34.  She also testified that she tries to walk for exercise but that she cannot make it around her block because of the pain in her back and leg.  T. 34.  At the grocery store, Gray said she can stand for up to fifteen minutes before sitting down.  T. 35.  She said that, while she could probably carry a ten-pound bag of sugar, she could not carry more than that.  T. 35-36.  Gray also testified that she has trouble sleeping at night and suffers from fatigue.  T. 131.  She says that she can sit for two to three hours at a time before the pain returns.  T. 131.  She prepares her own meals each day, which usually takes at least twenty minutes.  T. 135.  She goes outside at least once each day to check the mail.  T. 136.

Upon conducting the required five-step analysis in determining whether Gray is eligible for supplemental security income and disability insurance benefits, 20 C.F.R. §§ 404.1520, 416.920 (2010), *Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003), the Administrative Law Judge determined that Gray has not been engaged in substantial gainful activity since the onset of her alleged disability; that Gray has a severe impairment within the meaning of the Social Security Regulations; and that this impairment does not meet a listed requirement.  The ALJ also found that Gray has the residual functional capacity to do light exertional work activity with a sit or stand option.  T. 16.  The ALJ concluded, based on vocational expert testimony, that significant numbers of jobs exist in the national economy that Gray could be expected to perform, specifically marking

clerk and products assembler, considering her age, education, past work experience, and residual functional capacity. T. 17, 39-40. Thus, the ALJ found that Gray was not eligible for supplemental security income or disability insurance benefits under the Act. Gray filed a request for review, which the Appeals Council denied, and the ALJ's decision thereby became the final decision of the Social Security Commissioner. Gray now seeks review in this Court.

## II.

The Court's job is "'to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) (quoting *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* The Court "'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'" *Id.* (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)). Nevertheless, "[t]he review [the Court] undertake[s] is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, [the Court] also take[s] into account whatever in the record fairly detracts from the decision." *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998).

## III.

Gray's only argument on appeal is that the ALJ failed to give significant weight to the opinion of Dr. Patton, Ms. Gray's primary care physician. On August 7, 2009, Dr. Patton reported:

> Ms. Gray is well known to this clinic. She has been a patient here since November 2007. She is a native of this community [and] is also known to the staff. She has been a hard worker all her life has been a smoker and has little education. Tasks were done in late 2007 to investigate her back pain. These tests indicated she had spinal stenosis at L4L5 and S1 as well as piriformis syndrome. The problems in

her back are largely the result of osteoarthritis or degenerative joint disease.  This is a progressive disease and the prognosis for Ms. Gray is poor.

It is my medical opinion that she is indeed medically disabled secondary to her osteoarthritis and other pain syndromes.  I am also pessimistic that with [her] level of education and work experience she will be able to find work that she can perform.

Tr. at 336.  On September 21, 2009, Dr. Patton sent a letter to Ms. Gray's attorney stating that he supported Gray's claim for disability "because with her level of education and work experience that is the only way I know for her to access routine or non emergency healthcare."  T. 337.

The Eighth Circuit has held that "[a] treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record."  *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).  This rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians.  *Thomas v. Sullivan*, 928 F.2d 255, 259 n.3 (8th Cir. 1991); *see* 20 C.F.R. §§ 404.1527(d)(2)(i) and 416.927(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  A treating physician's opinion is not entitled to deference, however, when the opinion consists of nothing more than conclusory statements.  *Thomas*, 928 F.2d at 259.  A conclusory statement of disability, without supporting evidence, does not overcome substantial medical evidence supporting the Commissioner's decision.  *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 971 (8th Cir. 1994); *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992).

Dr. Patton's conclusions that Gray is disabled, that she will not be able to find work, and that she cannot access routine healthcare absent disability insurance are not entitled to any level of

6

deference.  *See Thomas*, 928 F.2d at 259.  The ALJ is not required to accept conclusions of treating physicians that are based, in part, on vocational factors.  *See Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991) (determining that the treating physicians did not qualify as experts in vocational matters and refusing to accept their conclusions that were outside of their expertise).  The opinion that a plaintiff cannot be gainfully employed is not a medical opinion but an opinion on the application of a statute, a task assigned solely to the discretion of the Commissioner.  *Krogmeier*, 294 F.3d at 1023.

Furthermore, Dr. Patton's opinion that Ms. Gray's prognosis is poor is both conclusory in nature and inconsistent with the record.  *See Loving*, 16 F.3d at 971. Although Gray was diagnosed with degenerative disc disease and piriformis syndrome, she appeared to improve with medication and physical therapy.  No physician from whom she sought treatment recommended surgery or any other procedure for managing her pain.  As the ALJ noted, Gray has not sought out emergency treatment or any other treatment at the frequency expected that would be supportive of severe pain to the amount alleged.  Tr. of Record at 11; *see Benskin v. Bowen*, 830 F.2d 878, 884Thank (8th Cir. 1987) (finding that failure to seek medical attention is inconsistent with complaints of disabling pain).  As noted above, when Gray was discharged from therapy in March of 2008, the therapist reported that the goals of restoring functional gait, decreasing pain to a functional level of 1/10, and achieving the ability to manage her symptoms with home exercise had been met.  Dr. Campbell, the neurologist, concluded that Gray seemed to improve with physical therapy and recommended against surgery, as did Dr. Eubanks, another neurologist.  The ALJ did not err in his decision not to give Dr. Patton's opinion greater weight.  His conclusions are supported by substantial evidence.

**CONCLUSION**

The ALJ properly determined that Dr. Patton's opinion to be conclusory and inconsistent with objective medical evidence.  The ALJ's conclusions are supported by substantial evidence. Accordingly, the decision of the Commissioner of the Social Security Administration is affirmed.

IT IS SO ORDERED this 16th day of June, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE